IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LYNN A. FULMORE, et al. | * | |
| v. | * | Civil No. JFM-09-2028 |
| PREMIER FINANCIAL CORP., et al. | * | |
| CHARLES HEBB, et al. | * | |
| v. | * | Civil No. JFM-09-2334 |
| PREMIER FINANCIAL CORP., et al. | * | |
| EDWIN RUBLE | * | |
| v. | * | Civil No. JFM-09-2484 |
| UNION MORTGAGE GROUP, INC. (f/k/a MORTGAGE CAPITAL INVESTORS, INC.) | * | |

******

MEMORANDUM

Plaintiffs Lynn Fulmore ("Fulmore"), Charles and Charlene Hebb ("the Hebbs"), and Edwin Ruble ("Ruble") (collectively, "Plaintiffs") have brought suit on behalf of themselves and classes of similarly situated individuals against companies from which they obtained secondary mortgage loans ("the Originator Defendants"). They allege that the Originator Defendants violated Maryland's Secondary Mortgage Loan Law ("SMLL"), Md. Code Ann., Com. Law §§ 12-401 to 12-415, in the making of their loans and the loans of other class members. Now pending, in *Fulmore* and *Hebb*, are the Originator Defendants' Partial Motions to Dismiss and, in *Ruble*, the Originator Defendant's Motion for Partial Judgment on the Pleadings. In *Fulmore*

1

and *Hebb*, the Motions will be granted in part and denied in part. In *Ruble*, the Motion will be granted.[1]

I.

Plaintiffs' SMLL claims arise from secondary mortgage loans allegedly obtained from the Originator Defendants in 1997 and 1998. Fulmore obtained a secondary mortgage loan from Premier Financial Corporation ("PFC") on September 12, 1997, and she alleges PFC charged fees totaling $1337 at closing. In addition, she claims she was not provided a mandatory disclosure form prepared by the Maryland Commissioner of Financial Regulation. Her loan was subsequently assigned to Sovereign Bank. (Fulmore Third Am. Class Action Compl. & Demand Jury Trial ("Fulmore Compl.") ¶¶ 24–30.) On March 23, 1998, the Hebbs obtained a secondary mortgage loan originated by PFC. They allege that, at closing, they were charged fees totaling $3,670.50 and that PFC failed to provide them with the mandatory disclosure form. The Hebbs' loan was assigned to TMS Mortgage. (Hebb Second Am. Class Action Compl. & Demand Jury Trial ("Hebb Compl.") ¶¶ 24–30.) Ruble alleges he obtained a secondary mortgage loan from Mortgage Capital Investors, Inc. ("MCI"), now known as Union Mortgage Group, Inc. ("Union"), on March 18, 1998. At closing, he was charged fees totaling $4839.50 and was not provided with the mandatory disclosure form. (Ruble Third Am. & Class Action Compl. & Demand Jury Trial ("Ruble Compl.") ¶¶ 21–24.)

In their pleadings, Plaintiffs assert the Originator Defendants are liable for the following violations of the SMLL: (1) charging closing costs and fees in excess of those permitted by the SMLL; (2) failing to furnish applicants with a required form prepared by the Maryland Commissioner of Financial Regulation; (3) imposing excessive delinquent or late charges; and

---

[1] The motions are not expressly characterized as "Partial" but the arguments made in support of the motions are directed only to some of the claims asserted by Plaintiffs.

(4) paying commissions, finder's fees, or points to brokers without a separate and distinct written agreement between the broker and the borrower. (Fulmore Compl. ¶¶ 68–73; Hebb Compl. ¶¶ 68–73; Ruble Compl. ¶¶ 44–49.) Fulmore and the Hebbs also sued the assignees of their loans, but I decided in a prior Opinion that the claims against the assignee defendants should be dismissed. With respect to the Originator Defendants, Fulmore and the Hebbs each seek to represent a class consisting of "[a]ll borrowers who, on or after August 4, 1997, obtained second mortgage loans governed by the SMLL from Premier Financial Corporation." (Fulmore Compl. ¶ 57; Hebb Compl. ¶ 57.) Ruble seeks to represent a class of "[a]ll borrowers who, on or after Aug. 25, 1997, obtained second mortgages governed by SMLL from MCI." (Ruble Compl. ¶ 33.)

## II.

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."[2] *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against

---

[2] The same standard applies to a motion for judgment on the pleadings, brought under Rule 12(c), as to a 12(b)(6) motion. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

3

him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alterations omitted). It is not sufficient that the well-pleaded facts create "the mere possibility of misconduct." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Id.* at 1949 (internal quotations and citation omitted).

III.

The Originator Defendants assert that Plaintiffs have failed to allege viable claims under the SMLL based upon excessive delinquent or late fees or upon the payment of brokers' fees without a distinct written agreement. Plaintiffs' Complaints do not include any allegations that the named plaintiffs in the instant actions were charged illegal late fees or brokers' fees without a separate written agreement. The factual allegations regarding their loans address only the charging of improper fees at closing and the failure to provide the required disclosure form. Therefore, accepting as true the factual allegations in the Complaints, it is not plausible that the

4

Originator Defendants will be liable for violating the SMLL with respect to late fees and broker fee agreements.[3]

PFC also argues that Plaintiffs' class claims in *Fulmore* and *Hebb* should be dismissed to the extent they involve loans made more than twelve years before the present class actions were commenced because class action tolling does not apply. As PFC argues, the class definitions proposed as to the assignee defendants included claims for which the twelve-year statute of limitations has expired. (*See* Fulmore Compl. ¶ 57; Hebb Compl. ¶ 57.) These claims would be cognizable only if limitations were tolled as to them. As to PFC, however, the relevant class definitions appear only to seek to include borrows who obtained loans on or after August 4, 1997.[4] These claims clearly are cognizable regardless of whether the tolling doctrine applies to claims arising on an earlier date.

For the foregoing reasons, Union's Motion for Judgment on the Pleadings will be granted and PFC's Motions to Dismiss will be granted in part and denied in part.

---

[3] Because I find that Plaintiffs' factual allegations with respect to the brokers' fee agreements are insufficient to support their SMLL claims, I need not decide whether the SMLL, as it existed at the time Plaintiffs' obtained their loans, required separate agreements between borrowers and brokers for the payment of brokers' fees.

[4] In *Fulmore*, this class definition was first asserted in the Second Amended Complaint, which was filed on August 4, 2009. (Fulmore Second Am. Class Action Compl. & Demand Jury Trial ¶ 38.) The record in *Hebb* is not clear, however, as to the date on which the complaint including this class definition was filed. *Hebb* was originally brought in the Circuit Court for Baltimore City and was removed to this Court. The Notice of Removal stated that the Amended Complaint, which included the relevant class definition, was filed on August 5, 2009. (Notice Removal ¶ 5.) The Maryland Judiciary's electronic case record, in contrast, states that this Complaint was filed on August 6, 2009. Therefore, the claims falling within the proposed class action definition that arose between August 4 and August 6, 1997, might not be cognizable unless the tolling doctrine applies to them. I will assume, however, that the parties can work this issue out by determining exactly when the Amended Complaint in *Hebb* was filed in state court and agreeing upon a class action definition that includes only claims that arose within twelve years of that date. If not, I will decide the tolling issue.

March 4, 2011 /s/
Date J. Frederick Motz
United States District Judge